#### IN THE UNITED STATES DISTRICT COURT
#### FOR THE WESTERN DISTRICT OF ARKANSAS
#### FAYETTEVILLE DIVISION

**STACY O. JACKSON**                                                                                          **PLAINTIFF**

**V.**                                          **CASE NO. 5:22-CV-5105**

**BANK OF AMERICA, N.A.**                                                                           **DEFENDANT**

#### MEMORANDUM OPINION AND ORDER

Before the Court are Defendant Bank of America, N.A.'s Motion to Dismiss and Memorandum of Law in Support (Docs. 6 & 7) and Plaintiff Stacy O. Jackson's Response in Opposition (Doc. 11).  On September 23, 2022, Mr. Jackson, proceeding pro se, and counsel for Bank of America appeared in Court for a hearing on the Motion.  Following oral argument, the Court dismissed two of Mr. Jackson's claims with prejudice and one claim without prejudice.  The Court declined to exercise supplemental jurisdiction over the remaining state law claim.

This Order explains in further detail the Court's decision.  To the extent anything in this Order differs from what was stated from the bench, this Order will control.

#### I. BACKGROUND

Mr. Jackson sues Bank of America for breach of contract, negligence, intentional infliction of emotional distress (outrage), and race discrimination pursuant to 42 U.S.C. § 1981.  Federal subject matter jurisdiction is appropriate due to the presence of a federal question.  *See* 28 U.S.C. § 1331.

Mr. Jackson contends that on October 10, 2017, while he was incarcerated in the Washington County Detention Center, his then-girlfriend, Ms. Brittany Patton, fraudulently opened a Bank of America checking account online in his name.  He claims she then

1

forged his signature on a durable power-of-attorney document and caused that document to be notarized and filed with the county clerk on October 18, 2018.  Also on October 18, Ms. Patton allegedly signed Mr. Jackson's name to the back of his social security check—again, without his knowledge or authorization—and went in person to the bank to deposit the check in the checking account she had fraudulently opened.  The amount of the check was $5,975.25.  Mr. Jackson claims that for the next month or so, Ms. Patton made unauthorized withdrawals from the checking account until the account was fully depleted.  Mr. Jackson discovered Ms. Patton's fraud sometime in November 2017 and reported it to police while he was still in jail.  He attaches the police report as an exhibit to the Complaint.[1]

According to the police report, Officer T. Sindles visited a Bank of America branch in Fayetteville on December 4, 2017, in response to Mr. Jackson's report of "a possible forgery."  (Doc. 1-1, p. 2).  Mr. Jackson had told police "[h]e believed that his now wife, Brittany Patton, had taken his social security check while he was in jail, forged his

---

[1] Also attached to the Complaint are a number of other documents, including a copy of the cancelled social security check made out to Stacy O. Jackson in the amount of $5,975.25; a letter and report from Mr. Jackson's mental health care provider; a copy of a Bank of America transaction history report for the checking account ending in 8626, owned by "Stacy O. Jackson"; and a certified copy of a durable power-of-attorney document appointing Brittany Nicole Patton as Mr. Jackson's attorney-in-fact, filed on October 18, 2017, by the County Clerk of Washington County, Arkansas.  (Doc. 1-1).  While a court may not generally consider matters outside the pleadings when ruling on a motion to dismiss, "exceptions include: matters of public record . . . and exhibits attached to the complaint whose authenticity is unquestioned." *Von Kaenel v. Armstrong Teasdale, LLP*, 943 F.3d 1139, 1143 (8th Cir. 2019) (quotation and citation omitted).  Here, Mr. Jackson and Bank of America agree that all documents attached as exhibits to the Complaint are authentic and contain accurate information—with the exception of the durable power-of-attorney document, which Mr. Jackson contends was procured by fraud and does not contain his authentic signature.  Mr. Jackson otherwise agrees that this document is an authentic copy of the original that was filed with the county clerk.

signature, and deposited the check in an account she had also created in his name." *Id.* She then "took and used all the money from that Social Security [check]." *Id.*

Officer Sindles met with the bank manager on December 4 and confirmed that the account in question was opened in Mr. Jackson's name online on October 10, 2017, during the time Mr. Jackson "would have been incarcerated." *Id.* According to Officer Sindles, Mr. Jackson had been incarcerated in the Washington County Detention Center since August 2017. *Id.* Officer Sindles noted in his report that he had obtained a copy of the cancelled social security check from the bank manager as well as a list of transactions made on the account.

The Complaint attaches as an exhibit the "Transaction History Report" pertaining to the bank account in question. *See id.* at p. 13. The Report was printed on August 27, 2018. *Id.* The earliest entry on the Report is dated October 10, 2017, which corresponds to the date Mr. Jackson claims the bank account was opened by Ms. Patton. There are no transactions listed on the Report until October 18, 2017, which corresponds to the date Mr. Jackson claims Ms. Patton deposited his social security check. On that date, a check for $5,975.25 was deposited at the bank counter. *See id.* After October 18, the Report records a number of withdrawals from the bank account, including: ATM withdrawals, a utility payment made to the City of Fayetteville, purchases made at Wal-Mart, a PayPal fund transfer, and a "checkcard" purchased from "jailatm.com." *Id.* at pp. 11–12. The account's balance was entirely depleted on November 16, 2017, and a negative balance was posted to the account on that date. *Id.* at p. 11. As of August 27, 2018, the date the Report was printed, the account held a negative balance of $54.71. *Id.* at p. 9.

3

According to the Complaint, Mr. Jackson was released from jail sometime in 2018, though the precise date is not stated. He claims he went to the bank to inquire about the account and was "informed the Account had been frozen." (Doc. 1, ¶ 13). He was also informed that the bank had "opened fraud investigations" related to the account, but he complains he was never given "a final answer" about the results of that investigation. *Id.*

Mr. Jackson blames Bank of America for allowing Ms. Patton to open an account in his name without his permission, accepting a forged and fraudulent power-of-attorney document from her, allowing her to deposit his social security check and then withdraw that money from the account, and for refusing to help him "recover the lost sums" that Ms. Patton converted for her personal use. *Id.* at ¶ 49.

Bank of America moves to dismiss all claims under Federal Rule of Civil Procedure 12(b)(6). It contends that Mr. Jackson's claims of negligence, intentional infliction of emotional distress (outrage), and race discrimination under § 1981 are all time-barred. In the alternative, Bank of America explains why each of cause of action should be dismissed for failure to state a claim.

## II.  LEGAL STANDARD

To survive a 12(b)(6) motion, the "complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotation marks omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Glick v. W. Power Sports, Inc.*, 944 F.3d 714, 717 (8th Cir. 2019) (quoting *Iqbal*, 556 U.S. at 678)). In ruling, the Court must "accept as true all facts pleaded by the non-moving party and grant all reasonable

inferences from the pleadings in favor of the nonmoving party." *Gallagher v. City of Clayton*, 699 F.3d 1013, 1016 (8th Cir. 2012) (quotation marks omitted).

"Generally, a motion to dismiss may be granted when a claim is barred under a statute of limitations." *Varner v. Peterson Farms*, 371 F.3d 1011, 1016 (8th Cir. 2004). "[I]f there is any reasonable doubt as to the application of the statute of limitations, this court will resolve the question in favor of the complaint standing and against the challenge." *Arkansas v. Diamond Lakes Oil Co.*, 347 Ark. 618, 616 (2002).  As a general rule, the statute of limitations "begins to run when the injury occurs, not when it is discovered" unless the defendant has engaged in "affirmative and fraudulent acts of concealment." *Hutcherson v. Rutledge*, 2017 Ark. 349, *4 (2017).  "Once a defendant has affirmatively raised a statute-of-limitations defense, and it is clear from the face of the complaint that the action is barred by the applicable limitations period, the burden shifts to the plaintiff to prove by a preponderance of the evidence that the statute of limitations was in fact tolled." *Id.* at *3–4.

### III.  DISCUSSION

**A.  Negligence and Intentional Infliction of Emotional Distress (Outrage)**

Viewing the facts in the Complaint in the light most favorable to Mr. Jackson and accepting those facts as true, his claims of negligence and intentional infliction of emotional distress, which is known as the tort of "outrage" in Arkansas, are both time-barred.  Further, he has not asserted—nor can he plausibly assert in the future—any tolling argument that would save those claims from dismissal. From the face of the Complaint, all tortious acts allegedly committed by Bank of America, including negligence and outrage, accrued on or about October 10, 2017, the date a fraudulent bank account

was opened online without Mr. Jackson's knowledge and approval. Even if the Court considers the claims to have accrued as late as December 5, 2017, the date Officer Sindles visited Bank of America to investigate Mr. Jackson's fraud report, both of these causes of action would still be time-barred.

A three-year statute of limitations applies to tort actions for negligence. *See Grand Valley Ridge, LLC v. Metro. Nat'l Bank*, 2012 Ark. 121, *18 (2012); Ark. Code Ann. § 16-56-105. "Arkansas does not recognize a 'continuing tort' theory, and therefore, for a tort to be actionable, it must have occurred within three years of the complaint." *Mtn. Home Flight Serv., Inc. v. Baxter Cnty.*, 758 F.3d 1038, 1043 (8th Cir. 2014) (citing *Quality Optical of Jonesboro, Inc. v. Trusty Optical, LLC*, 365 Ark. 106, 225 (2006)). The Complaint in this case was filed on June 3, 2022. All tort claims stated in the Complaint must have accrued after than June 3, 2019, to be timely. According to the Complaint, the bank committed negligence as early as October 10, 2017, when it permitted Ms. Patton to open an online checking account in Mr. Jackson's name without his knowledge and without requiring adequate identity verification. At the very least, Mr. Jackson admits he was aware of this conduct by late November 2017 when he informed the police. He did not file this lawsuit for more than four years after that. The negligence claim is therefore time-barred.

A three-year statute of limitations also applies to Mr. Jackson's claim of outrage. *See Hutcherson*, 2017 Ark. at *5. "The statute of limitations begins to run when the injury occurs, not when it is discovered." *Id.* at *4. According to the face of the Complaint, any

6

injury caused by Bank of America accrued in late 2017, which makes the claim time-barred.[2]

## B.  42 U.S.C. § 1981

Mr. Jackson has failed to state a plausible claim of race discrimination under § 1981.  Mr. Jackson is African-American and maintains that Bank of America discriminated against him with respect to the making or enforcing of a contract for banking services in violation § 1981.  The first problem with this claim is that, according to the Complaint, Mr. Jackson disputes he entered into a valid contract with Bank of America.  He maintains Ms. Patton fraudulently opened a bank account in his name without his knowledge and approval.  Setting aside this fact and assuming Mr. Jackson and Bank of America entered into a valid contractual or quasi-contractual relationship as bank and customer, a cognizable § 1981 claim requires at least some evidence of discriminatory

---

[2] At the motion hearing, Mr. Jackson suggested the three-year statute of limitations should be tolled due to his mental illness or disability.  He attached to his Complaint proof that he visited mental health care professionals for treatment of anxiety and other ailments.  He also stated in open court that he had been diagnosed with bipolar disorder.  The Court inquired of Mr. Jackson whether he had ever been declared legally incompetent by a court, and he responded, "No, sir.  I didn't go to court.  I just got the doctor notes that states that when he started seeing me for, what he started seeing me for and his diagnosis of what he felt I was experiencing from Bank of America taking my . . . social security money."

Arkansas Code § 16-56-116(a) permits the tolling of a limitations period for someone deemed "insane" at the time the cause of action accrues.  However, according to the Arkansas Supreme Court, a mental infirmity only rises to the level of "insanity" "[i]f the brain has become so affected, irrespective of cause, as to appreciably contracept a person's power to reason." *Barre v. Hoffman*, 2009 Ark. 373, at *9 (2009) (citation and quotation omitted).  This is a high standard.  As the Court explained to Mr. Jackson during the motion hearing, the mere fact that he suffers from a mental illness or disability does not justify tolling the statute of limitations clock.

7

intent on the part of the defendant. *See Green v. Dillard's, Inc.,* 483 F.3d 533, 538 (8th Cir. 2007).

Mr. Jackson asserts that Bank of America "intentionally discriminated against [him] because of his race" by allowing Ms. Patton to open a fraudulent bank account in Mr. Jackson's name, allowing her "to remove funds from the account without replacing same," and "refus[ing] to release the funds left in Plaintiff's account." (Doc. 1, ¶ 47). There are no facts in the Complaint to indicate that Bank of America's treatment of Mr. Jackson was motivated by racial animus. During the motion hearing, Mr. Jackson argued that in other cases he has researched, Bank of America has been required to pay damages for discriminating against its customers. Those other cases, however, do not help Mr. Jackson state a claim for race discrimination. Under the pleading standards set forth in *Ashcroft v. Iqbal*, the bare assertion that Bank of America injured Mr. Jackson "because of [his] race," (Doc. 1 ¶ 47), is conclusory and a "formulaic recitation of the elements" of a discrimination claim, *Iqbal*, 556 U.S. at 681. This claim is therefore dismissed pursuant to Rule 12(b)(6).

### C. Breach of Contract

The last claim for the Court to consider is breach of contract. Mr. Jackson asserts that Bank of America "had a contractual obligation to protect and preserve Plaintiff[']s account because the Plaintiff made an offer to enter a contract with the Bank through opening an account and banking there." (Doc. 1, ¶ 26). This statement appears to contradict the rest of the facts in the Complaint, which claim Mr. Jackson did not knowingly enter into a contract with Bank of America and did not voluntarily open an account. Setting aside this factual inconsistency, if the Court assumes a valid contractual or quasi-

contractual relationship exists between the parties, Mr. Jackson claims Bank of America "materially breached this contract by permitting the Account to be used by an unauthorized party, by failing to red-flag the Account, and by failing to permit Plaintiff to transact from the Account so that he could pay his bills." *Id.* at ¶ 27.

As the Court has now dismissed the § 1981 claim, which is the only claim over which the Court had original federal jurisdiction, the Court may, in its discretion, decline to exercise supplemental jurisdiction over any remaining state law claims. *See* 28 U.S.C. § 1367(c)(3). The Court observes that this early-stage dismissal will cause little disruption to the parties and declines to exercise supplemental jurisdiction over the breach of contract claim. Accordingly, the breach of contract claim is dismissed without prejudice.

## IV. CONCLUSION

**IT IS THEREFORE ORDERED** that Defendant Bank of America's Motion to Dismiss (Doc. 6) is **GRANTED IN PART AND DENIED IN PART**. The claims of negligence and intentional infliction of emotional distress (outrage) are **DISMISSED WITH PREJUDICE** due to the expiration of the statute of limitations. The claim of race discrimination under 42 U.S.C. § 1983 is **DISMISSED WITHOUT PREJUDICE** for failure to state a claim. The Court declines to rule on the merits of the remaining state law claim for breach of contract and instead declines to exercise supplemental jurisdiction pursuant to 28 U.S.C. § 1367(c)(3). The breach of contract claim is therefore **DISMISSED WITHOUT PREJUDICE**.

**IT IS SO ORDERED** on this 28th day of September, 2022.

_____
TIMOTHY L. BROOKS
UNITED STATES DISTRICT JUDGE